In the

# United States Court of Appeals
### For the Seventh Circuit

———————————

Nos. 12-1715 & 12-1894

DAN K. ARNOLD,

*Plaintiff-Appellant,*

*v.*

KJD REAL ESTATE, LLC,

*Defendant-Appellee, Cross-Appellant,*

*v.*

GEISSLER ROOFING CO., INC., and
D & D PROPERTY MANAGEMENT, INC.

*Defendants-Appellees, Cross-Appellees.*

———————————

Appeals from the United States District Court for the
Southern District of Illinois.
No. 10-913-GPM — **G. Patrick Murphy**, *Judge.*

———————————

ARGUED DECEMBER 11, 2013 — DECIDED MAY 20, 2014

———————————

Before WOOD, *Chief Judge,* and FLAUM and SYKES, *Circuit Judges.*

WOOD, *Chief Judge.* The *Rooker-Feldman* doctrine rests on the fact that only the Supreme Court of the United States has

appellate jurisdiction over state court decisions (and its authority extends only to federal questions, see 28 U.S.C. § 1257). In this case, a state court ordered Dan Arnold to deliver certain corporate stock to Geissler Roofing and D&D Property Management (collectively, the Corporate Defendants) pursuant to an earlier alleged settlement agreement. The state court did not know that Arnold had already sold the stock to a third party, KJD Real Estate (KJD). Arnold filed an interpleader action in the district court under Federal Rule of Civil Procedure 22 in which he asked the court to decide to whom he should transfer the stock. The district court dismissed the interpleader action under the *Rooker-Feldman* doctrine and ordered Arnold to compensate KJD in cash. We conclude that this was mistaken: the interpleader action does not attack the state court judgment itself, and so further proceedings are necessary.

**I**

Arnold was a former officer of both Corporate Defendants, and he held a significant amount of stock in each (38% of Geissler's shares and 50% of D&D's). In 1999, Arnold sued the Corporate Defendants in Illinois state court on claims of shareholder oppression. That action remained pending for seven years. In November 2006, the parties allegedly agreed to settle the case. They never executed any settlement documents, however, and none of the defendants has ever paid Arnold any of the $207,500 that the purported agreement would have required. Nonetheless, relying on the alleged settlement agreement, the Corporate Defendants moved to dismiss the state case. While that motion was pending, Arnold moved for a voluntary dismissal. The court granted

Arnold's motion and dismissed with prejudice without deciding whether the case had been settled.

About a month later, Arnold agreed to sell his stock in the Corporate Defendants to KJD for $290,000. KJD advanced $100,000 to Arnold as required by the written stock purchase agreement, and Arnold represented that he had good title to the stock and could transfer it. After the stock-purchase agreement was finalized, KJD notified the Corporate Defendants that it had purchased the stock and wished to inspect the corporate books. The Corporate Defendants did not respond to KJD's request.

Instead, they moved to vacate the dismissal of Arnold's original suit in state court, reiterating their view that the case had been settled. Pursuant to that alleged settlement, they contended, Arnold already had transferred his stock to the two corporations. Taking a belt-and-suspenders approach, the Corporate Defendants also filed a second action against Arnold in Illinois state court before a different judge. Although Arnold was properly served, he did not appear, and so the second state court issued a default judgment ordering Arnold to execute the settlement papers and comply with that agreement. The Appellate Court of Illinois affirmed that judgment. KJD was never joined as a party in the second state court action despite the Corporate Defendants' knowledge of KJD's interest in the stock.

Meanwhile, back in the first state court proceeding, all the parties here, including KJD, appeared in response to the Corporate Defendants' motion to vacate the dismissal of Arnold's shareholder suit. Without informing the court or Arnold's counsel of the default judgment then in existence, the Corporate Defendants requested a continuance on the mo-

tion to vacate. At a later hearing, the Corporate Defendants informed the court of the default judgment, which by that time had become final under Illinois law. The court stayed further proceedings; to our knowledge, that action remains pending.

After the Appellate Court's decision was issued, Arnold filed this Rule 22 interpleader action, naming both the Corporate Defendants and KJD as defendants. Arnold's complaint specifically stated that he "makes no claim to continued ownership of the Geissler and D&D stock and stands willing to transfer the stock to whichever Interpleader Defendant the Court determines has the superior right to the stock." Arnold asked to be "fully and finally released from any and all liability to the Interpleader Defendants" once he delivered the stock to whichever defendant the court specified. KJD asserted a cross-claim against the Corporate Defendants for a declaratory judgment that it owned the stock. It also asserted, in the alternative, a counterclaim against Arnold for rescission of the stock-purchase agreement and return of the $100,000 advance KJD paid under that agreement.

Invoking the *Rooker-Feldman* doctrine, the district court dismissed Arnold's interpleader action and KJD's cross-claim on the ground that "the injury complained of by both Arnold and KJD clearly is the state court's order directing Arnold to execute the settlement agreement with [the Corporate Defendants] under the terms of which Arnold is required to tender back to [the Corporate Defendants] his shares in the companies in return for consideration in the amount of $207,500." The district court granted KJD's counterclaim against Arnold and ordered Arnold to return the $100,000

advance payment. Both Arnold and KJD have appealed to this court.

## II

We begin with a brief word about the district court's jurisdiction in this matter, wholly apart from the *Rooker-Feldman* issue that lies at the center of this case. As we have noted, Arnold relied on Rule 22 for his interpleader action. Rule 22 provides that "[p]ersons with claims that may expose a plaintiff to double or multiple liability may be joined as defendants and required to interplead." FED. R. CIV. P. 22(a)(1). Unlike statutory interpleader actions under 28 U.S.C. § 1335, "[i]nterpleader actions under Rule 22 … must be based upon the general jurisdiction statutes applicable to civil actions in the federal courts." 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, FEDERAL PRACTICE AND PROCEDURE § 1710 (3d ed. 1998 & Supp. 2010); see also *Comm'l Nat'l Bank of Chi. v. Demos*, 18 F.3d 485, 488 (7th Cir. 1994) ("Rule 22[a] provides a procedural framework for interpleader actions, but it does not confer subject-matter jurisdiction on federal courts."). A plaintiff such as Arnold, who is relying on the general diversity statute, 28 U.S.C. § 1332, must demonstrate complete diversity between the plaintiff-stakeholder and the claimant-defendants. An interpleader plaintiff need not show that each competing claimant has a winning claim; a reasonable fear of double liability is enough. *Aaron v. Mahl*, 550 F.3d 659, 663 (7th Cir. 2008).

In this case, the contest between the defendant-claimants, both of which are citizens of Illinois, involves only a question of Illinois law. Nevertheless, diversity jurisdiction is proper because complete diversity is assessed by looking at the plaintiff-stakeholder and the defendant-claimants. Ar-

nold, a Florida citizen, is diverse from all parties claiming an interest in the stock, and Arnold's complaint asks the court to relieve him of potential double liability to these claimants. As our account of the facts already has shown, the amount in controversy exceeds $75,000. Jurisdiction is therefore proper under 28 U.S.C. § 1332(a).

### III

We turn, then, to the heart of the case: the *Rooker-Feldman* doctrine. As we noted at the outset, this doctrine reflects a limitation on the subject-matter jurisdiction of lower federal courts. *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 555 (7th Cir. 1999). We review *de novo* the question whether, as the district court thought, *Rooker-Feldman* applies here. *Brokaw v. Weaver*, 305 F.3d 660, 664 (7th Cir. 2002).

The *Rooker-Feldman* doctrine derives from two Supreme Court cases in which plaintiffs "litigated and lost in state court … [then] essentially invited federal courts of first instance to review and reverse [the] unfavorable state court judgments." *Exxon Mobil Corp. v. Saudi Basic Inds. Corp.*, 544 U.S. 280, 283 (2005), discussing *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *D.C. Ct. of App. v. Feldman*, 460 U.S. 462 (1983). Because Congress empowered only the Supreme Court to exercise appellate authority to reverse and modify state court judgments, see 28 U.S.C. § 1257, such suits were declared "out of bounds, *i.e.*, properly dismissed for want of subject-matter jurisdiction." *Saudi Basic Inds.*, 544 U.S. at 283–84. The doctrine is narrowly confined to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id*. at 284.

Like the due process claim in *Long*, 182 F.3d at 555–56, cases requiring dismissal under *Rooker-Feldman* involve plaintiffs who are "attacking the judgment itself" or the procedures used in obtaining that judgment. *GASH Assocs. v. Village of Rosemont, Ill.*, 995 F.2d 726, 728 (7th Cir. 1993). In *GASH*, for example, the plaintiff alleged that the Village of Rosemont committed an unconstitutional taking by maneuvering to purchase plaintiff's property for a depressed price at a foreclosure sale. *Id*. at 727. A state court had confirmed the sale over plaintiff's "vigorous objection." *Id*. Because plaintiff's "injury came from the judgment confirming the sale" rather than "an injury out of court," *Rooker-Feldman* barred the suit. *Id*. at 729. Similarly, in *Leaf v. Supreme Court of Wisconsin*, the plaintiff sued the state high court for suspending her law license, alleging both that the suspension and the ethics rule on which it was based were unconstitutional. 979 F.2d 589, 594 (7th Cir. 1992). Leaf's claims were attacks on the propriety of the judgment and therefore barred by *Rooker-Feldman*. *Id*. at 598–600.

*Rooker-Feldman* thus comes into play only when the federal court assesses the propriety of a state court judgment. "If a federal plaintiff presents some independent claim, albeit one that denies a legal conclusion that a state court has reached," then *Rooker-Feldman* does not bar the court's jurisdiction. *Saudi Basic Inds.*, 544 U.S. at 293, citing *GASH*, 995 F.2d at 728. In so ruling, the Court disapproved some more expansive applications of the doctrine that had developed in the lower courts.

With that message in mind, we have no trouble concluding that *Rooker-Feldman* does not bar Arnold's suit. Indeed, Arnold's interpleader action proceeds on the

premise that the state court's adjudication of the rights between himself and the Corporate Defendants was a valid and binding judgment. But it was a judgment that bound only him; KJD was not a party to the suit. See *Kamilewicz v. Bank of Boston*, 100 F.3d 1348, 1351 (7th Cir. 1996) (Easterbrook, J., dissenting from denial of rehearing *en banc*) ("[T]he *Rooker-Feldman* doctrine does not affect suits by or against persons who were not parties to the initial case."); see also *Downs v. Westphal*, 87 F.3d 202, 203 (7th Cir. 1996) (Rovner, J., concurring). It is one thing to resolve whether a person has a binding contract or an interest in an item such as corporate stock; it is quite another to resolve the question whether A's property right is superior to B's, or vice versa. Arnold's interpleader action raises the second question, which was never before the state court. In the course of deciding that priority issue, Arnold asks the court to relieve him of his exposure to double liability from his conflicting obligations related to the stock. Although Arnold's injury is undoubtedly related to the state court judgment, his suit does not "attack[] the judgment itself." See *GASH*, 995 F.3d at 728.

It does not, we clarify, unless the nature of the relief that the state court ordered makes a difference. The Corporate Defendants argued—and the district court agreed—that the state court ordered specific performance with respect to Arnold's delivery of the stock. That was precisely what the Corporate Defendants had requested. The state trial court's default judgment ordered Arnold to execute all settlement documents that he had received. Only in denying Arnold's motion to vacate the default judgment did the court add that Arnold was "ordered to execute settlement documents *and* comply with the terms of the settlement agreement." Order,

No. 07-CH-1044 (St. Clair Co. Cir. Ct., Dec. 15, 2008) (emphasis added).

We conclude that this detail does not change our *Rooker-Feldman* analysis. Arnold's interpleader action merely compels the Corporate Defendants and KJD to litigate ownership of the stock among themselves. Each one has an asserted basis for a claim of right to the stock, one contractual and one based on the state court judgment. If the federal court decides that KJD's claim to the stock is superior to that of the Corporate Defendants, the court may skip the formalistic step of Arnold's transferring the stock to the Corporate Defendants (pursuant to the state court's specific-performance decree) only to have the Corporate Defendants immediately transfer the stock to KJD (pursuant to the interpleader court's order). Because all concerned parties are participating in the interpleader action, the court may order a direct transfer from Arnold to whichever party prevails. See *State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 533 (1967) (discussing the ways in which "[c]onsiderations of judicial administration" inform interpleader procedures).

## IV

Although the state court judgment does not foreclose Arnold's federal suit, it may preclude some of the relief Arnold seeks. Courts often confuse *Rooker-Feldman* cases with cases involving ordinary claim or issue preclusion. See *Saudi Basic Inds.*, 544 U.S. at 283 (criticizing lower courts for "superseding the ordinary application of preclusion law" in favor of *Rooker-Feldman*). "In contrast to the *Rooker-Feldman* doctrine … *res judicata* constitutes an affirmative defense and is dependent upon the Full Faith and Credit statute, 28 U.S.C. § 1738, which requires federal courts to give a state court

judgment the same preclusive effect it would have in state court." *Long*, 182 F.3d at 560.

Arnold's goal in this litigation is to obtain a declaratory judgment that he is not liable to whichever claimant loses in the interpleader dispute. This potentially sweeps more broadly than a request to decide only which party is entitled to the stock. We already have explained why, if the district court on remand determines that KJD has the superior claim to the stock, it can order Arnold to transfer the stock to KJD. Such a ruling would not disturb the state court's judgment, nor would it fail to give that judgment full faith and credit, because the question of liability implicates more than the disposition of the shares. The state court's judgment might entitle the Corporate Defendants to some other remedy against Arnold. If the interpleader court concludes that the Corporate Defendants have the superior claim to the stock, then it could either stop there or proceed to decide the related question whether Arnold remains liable to KJD in some way. It would be premature for us to rule on those questions at this stage, since anything we might say would be based on speculation about the outcome of the interpleader dispute. In addition, as we now point out, the interpleader court might wish to abstain on some or all of these issues.

## V

The Corporate Defendants have argued that even if *Rooker-Feldman* does not bar the suit, abstention is appropriate under the doctrine of *Brillhart v. Excess Ins. Co. of Amer.*, 316 U.S. 491 (1942) and *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995). *Wilton-Brillhart* abstention applies when "a federal court [is called upon] to proceed in a declaratory judgment suit where another suit is pending in state court presenting

the same issues, not governed by federal law, between the same parties." *Brillhart*, 316 U.S. at 495. In such a case, "the question for [the] district court … is 'whether the questions in controversy between the parties to the federal suit … can better be settled in the proceeding pending in the state court.'" *Wilton*, 515 U.S. at 282, quoting *Brillhart*. A concern for comity underlies this doctrine. As the Court put it in *Wilton*, "where another suit involving the same parties and presenting opportunity for ventilation of the same state law issues is pending in state court, a district court might be indulging in gratuitous interference if it permitted the federal declaratory action to proceed." *Id*. at 283 (quotation omitted).

*Wilton-Brillhart* abstention is possible because of the federal court's "unique and substantial discretion in deciding whether to declare the rights of litigants." *Id*. at 286; see also 28 U.S.C. § 2201(a) (providing that the court "*may* declare the rights and other legal relations of any interested party seeking such declaration") (emphasis added). The Declaratory Judgment Act is "an enabling Act, which confers a discretion upon the courts rather than an absolute right upon the litigant." *Id.* at 287, quoting *Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 241 (1952). "[T]he propriety of declaratory relief in a particular case will depend upon a circumspect sense of its fitness informed by the teachings and experience concerning the functions and extent of federal judicial power." *Wycoff*, 344 U.S. at 243. In contrast to most other actions, "there is nothing automatic or obligatory about the assumption of jurisdiction by a federal court to hear a declaratory judgment action." *Wilton*, 515 U.S. at 288 (quotation omitted).

Several factors guide the court's discretion, including "the scope of the pending state court proceeding" and "whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding." *Brillhart*, 316 U.S. at 495. This is an inherently discretionary call for the district court, "because facts bearing on the usefulness of the declaratory judgment remedy, and the fitness of the case for resolution, are peculiarly within [its] grasp." *Wilton*, 515 U.S. at 289; see also *Miller v. Fenton*, 474 U.S. 104, 114 (1985).

Although the district court briefly addressed the issue before, *Wilton-Brillhart* abstention should be reconsidered on remand. The underlying dispute concerns a matter of Illinois law entirely between Illinois parties. That dispute is currently pending in the stayed state court lawsuit, which involves all the interested parties. This is a question that the district court should address anew.

## VI

*Rooker-Feldman* does not bar Arnold's interpleader action. We VACATE the district court's judgment dismissing on that basis and REMAND for further proceedings consistent with this opinion.